What can you call it? Are we good to keep going? Keep going, keep going. They're here. They're always here. We called people versus Elton Jordan. And the lawyers who are going to argue this case, please each give us your name for the record. My name is Eric Castaneda. Castaneda. How do you spell that, please? C-A-S-T-A-N-E-D-A. And Assistant State Attorney Brian Levinsky, I don't have any people who would say they don't know. Okay. As you both know, you each have 20 minutes. Mr. Castaneda, do you want to save some of that for rebuttal? Sure. And you don't need to use the whole 20 minutes, but you're welcome to. You may have a seat, Mr. Levinsky, and Mr. Castaneda, whenever you're ready, we are ready. Good afternoon, Your Honors. Good afternoon, Counsel. As I stated earlier, my name is Eric Castaneda. I'm with the Office of the State Appellate Defender on behalf of Mr. Elton Jordan. I will be addressing both issues raised in the briefs today. As for the first issue, up until the time that the jury was sworn, Mr. Jordan retained his fundamental constitutional right to waive that jury, and the trial court did not have any discretion to deny him that right. Now, this court's decision in People v. Rand is controlling. There, there was a broad-blind rule set that up until the point the jury is sworn,  and only after the jury is impaneled and sworn does the trial court have discretion to deny him that right. Here, Mr. Jordan clearly asked Judge Sachs, and I quote, I want to waive my jury trial. Judge Sachs understood this to mean that he wanted to waive his jury trial and that he wanted to proceed with a bench trial. At that point, he had no discretion to deny him his right to waive that jury. Now, the state relies on a second district court case, People v. Vest. However, that case is inapplicable here. There, they were analyzing, challenging a fraud indictment, and at what point is a defendant required to show prejudice? Under that context, the second district determined that a trial commences at the time that Wardere commences, and in doing so, the second district stated that there were certain significant interests that had to be waived against the defendant's right to a flawless indictment. Here, we are dealing with the fundamental and personal right to waive a jury. Does Rand really answer that question? Rand just says you don't have an absolute right after the jury is sworn, but it doesn't say when before that you lose your absolute right, does it, except sort of in dicta maybe? No, the Rand decision clearly states that after the jury is impaneled and sworn, only after that does the trial court have discretion. That is clearly laid out in the language of Rand. Well, Rand, in Rand, it was after the jury was sworn, correct? Correct. So anything it said about what happens before the jury is sworn is dicta. It doesn't really, I mean, didn't really decide this issue directly, correct? It was necessary. That rule was necessary to establish in order to determine at what point does the trial court have this discretion. So we have to lay that guideline rule in order to make the analysis. When can we consider discretion? When is it an absolute right? So I think it was necessary to lay out that rule. Also considering that Rand was also distinguishing Zembridge and Stamos, and there it was suggested that the rule was before testimony began. So the Rand court clearly stated it's not when testimony begins. It's actually when the jurors are sworn. So I think that's a clear rule that was set out. Wouldn't that be inconsistent with Rand if we said, well, it's actually even earlier than that. It's when you start picking the jury. It would be inconsistent because it was clearly laid out in Rand that that rule was laid out, that it's up until the point that the jury is sworn. Does the defendant have an absolute right to weigh that jury? And it makes sense because it's up until that point that a jury has authority to hear the facts and render a verdict based on those facts. And our Supreme Court has stated in the People v. Bracey that when interpreting this right, it should be interpreted and strictly construed in favor of preservation of that right. And going back to the People v. Best case, and that's the distinction here. We're dealing with a fundamental and personal right to the defendant. It's one of the five personal decisions belonging to a defendant that only the accused can make. And in Daly v. Joyce, our Supreme Court has stated that when considering this right, it should remain, and I quote, unhampered by any condition or requirement in the interest of the state. And another thing I'd like to highlight about the Best case is that there, the second district discussed this court's decision in People v. Rank. It didn't disagree with it. It didn't overrule it. It only found that it was inapplicable under that context. And rightfully so because, again, here we're dealing with a fundamental and personal right to weigh the jury. And a defendant should be able to decide who's going to render a verdict based on the evidence that's going to be presented, which is precisely what we had here. Is there any Supreme Court case that says that the waiver becomes discretionary with the court after the jury is sworn? No, there's no Supreme Court case that. So why wouldn't the defendant have an absolute right to waive a jury at any point before the jury comes back with a verdict? Well, I think at some point the trial does have to commence. Right. The trial commenced. You've heard all the evidence. The jury's back deliberating. Why wouldn't the defendant have a right at that point to say, I waive a jury. I want the court to render a decision, not get a new trial, not start all over again, just I've had it with the jury. I want the court to make the decision. Why wouldn't that pertain other than Rand? Well, I think because these cases, someone relied on the also clear demarcation that it's set out in jeopardy, and it's because it's at that point that a trial commences and that a jury has the authority to hear the evidence and render a verdict at that point. And I think the Rand decision was correct in also making that a clear demarcation here because it's at that point that we must commence with trial, and it's only at that point that a jury has the authority to hear that evidence, and that's when trial commences. Why doesn't the defendant have a right to forego that opportunity and say, I waive it? Your Honor, I think, yes, because at some point the trial does have to commence. But if it's a trial commence thing, that's just our rule. There's no Supreme Court case that says you lose your absolute right to waive as soon as the trial commences. The Supreme Court's never said that, right? No. We've just said that. That's correct. So we could say, yeah, you keep it all the way until while the jury, you could keep it all the way until the jury comes back with the verdict. I mean, theoretically, we could say that. Other than the principle of stare decisis. Correct. Correct. This Court has already decided in Rand, and for this Court to go back and forth and change that guideline, we want to delineate what valid as it would be against stare decisis. We don't have to follow other appellate court decisions? No, Your Honor. This would be following this Court's decision in People v. Rand. We don't have to follow it? That's correct. And it would set, again, as Justice Walker pointed out, under stare decisis, this Court keeps changing that guideline rule, which at the time that my defendant, my client made his decision, the rule was that up until the time that the jury is sworn. I understand it, but I take exception with Justice Walker's statement of stare decisis. There's no Supreme Court ruling that requires us to follow when the jury is, when jeopardy attaches. We could, if we could muster a majority, we could say that that right to waive a jury trial stays with the defendant all the way through up until the time the jury returns a verdict. Couldn't we say that? You could say that, Your Honor. And, again, other than stare decisis, I think that would be bad policy because at that point, what is to stop a defendant to abuse that and say, well, you know, I didn't get a verdict in my favor, so then I want a bench trial instead. Well, before the verdict comes back, but see, the same argument could be as soon as you start picking the jury, you look around, you go, I don't like this group. I want to waive my right to a jury. But there's other protections in place for that. We have challenges that could be made, and at that point, that's just part of the criminal process up until the point the jury is sworn. Because, again, it's not up until that point that they have authority to render a verdict. And there has to be a line drawn at what point does the jury start, and I think this Court laid out the proper line and to the point that the jury is sworn because that allows the biggest window for the defendant without having to really abuse that right in the hypothetical that Your Honor opposes versus Pierce. Having it up until the time the jury is sworn, I think, is a good balance, and it coincides with the jeopardy right as well. And, again, unless that that Court did not disagree with this Court's decision in Rand that only found that it was inapplicable. And for those reasons, we ask that Mr. Jordan's convictions be vacated, and this matter be meted for a new trial. As to the second issue, the trial court conducted an improper Franco inquiry because it improperly applied the Strickland standard instead of determining whether there was possible neglect of the case. And the State is correct in conceding that the trial court admittedly referenced overall competence and prejudiced in its reasoning the hallmarks of the Strickland standard. And, indeed, at the conclusion of the hearing, Judge Sachs stated, whatever the lawyer did during the course of the trial, it was competent on her part. Whatever it is that she did, he was not prejudiced by this. And these are the hallmarks of the Strickland standard. I think this is indicative that the Strickland standard was being applied here. And this Court in People v. Jackson stated that this error alone, applying the Strickland standard during a preliminary Franco inquiry, requires a new preliminary Franco inquiry, and that's what we have here. However, that was not the only defect with the preliminary Franco inquiry. As Justice Judge Sachs failed to make any inquiry of trial counsel who was the subject of Mr. Jordan's claims, now a preliminary Franco inquiry does not automatically trigger, does not automatically require that any questions be asked of trial counsel. It's not automatically foreclosed either. And these were the types of claims where a few questions that would have taken a few moments would have sufficed in providing the trial court with sufficient information to determine whether there was possible neglect of the case. For example, Mr. Jordan claimed that trial counsel was ineffective for failing to obtain video surveillance footage from the PAL camera. While trial counsel did submit a letter to my client stating that she was unaware whether this video existed, that she would subpoena it, there's nothing in the record to show what trial counsel actually did to get these records, whether she knew they existed. A few simple questions from Judge Sachs would have sufficed in making these determinations, and then the trial judge would have been properly able to determine whether there was possible neglect of the case. Another one of my client's claims was that trial counsel was ineffective for failing to move to suppress based on Miranda. And people versus curries instructed under this claim where, similarly, the defendant moved for ineffective assistance of counsel post-trial, the trial court asked the defense attorney, what is this claim based on, to which the defense attorney simply replied, Miranda versus Arizona. The trial court made no further inquiry and only found that the police officer who had testified at trial had testified credibly that they had properly Mirandized the defendant curry. This court found that that was an insufficient inquiry because Miranda is such a totemic term that so many claims can stem from Miranda. Similarly here, while these claims were based on Miranda, we don't know exactly what the claims were. And some of the examples given by this court are we don't know whether the defendant's claim that there were no Miranda warnings, whether the Miranda warnings that were given were defective, whether he didn't understand the Miranda warnings, or whether he initially waived his rights but then invoked them later. Again, a few simple questions by the trial court. Would it suffice to provide this information? And for these reasons, if Your Honors do not grant relief under the first issue and remand this matter for a new trial, we ask that you remand this matter for a new preliminary crank or inquiry. And if Your Honors have no other questions. Just really quickly, though. The issue is that the once trial begins, there's no longer a right to waive. Is that sort of what you're arguing here? Once trial begins, which has been defined as when a jury is sworn under this context. I'm asking one question at a time. So you're saying it's when trial begins and then the next question is your argument is that trial begins once the jury is sworn. Correct. Thank you. Thank you. May I please record again, Assistant State's Attorney, Brian Levitsky, on behalf of the people of the State of Illinois. I'd like to clarify something that wasn't really addressed in the defendant's argument with respect to the first point, and that's that we don't think that there really was a clear implication of the right to a jury waiver in this case. Looking at the context of the hearing at which the defendant said, I just want to waive my jury and go. Did you argue that? It was a first point in our brief. It didn't clearly enough invoke his waiver. Is that your first point? Right. And we supported that with citations to the record for the defendant. After being informed that he would not be able to waive his jury at that point, what was his concern? I've got three or four motions in the back I want to follow. I want to do an evidentiary hearing. I've got witnesses I want to subpoena that weren't subpoenaed. Those are all indicative of a defendant who doesn't want to waive his jury trial but wants to continue his jury trial after Barbier has been conducted so that he can have these hearings and get additional evidence that would be presented to either the judge or the jury at a future date. And so I think that the first reason that this Court should affirm under this issue is because we don't really have a jury waiver in this case. Second, even if there was, the jury waiver came too late. It was simply untimely. And I want to say that we don't need to have, as counsel keeps saying, this bright-line rule of Barbier plus the jury being empaneled. First, the jury being empaneled is only really indicative of when the jury begins for double jeopardy purposes. And I think if we looked at Rand carefully, we see that it's essentially the same thing as this case. We had Barbier happened at night. The next day, the defendant comes in. He says, I want to continue, I want to waive, and the judge says no. The only difference between this case and that case is that in Rand, the jury happened to have been sworn in the night before. Here, the jury was sworn in the morning of, after the defendant. That's a major fact. That is what defines the start of a trial, certainly for double jeopardy purposes. For double jeopardy purposes, right. But I think if we look at why Rand said that that was an appropriate exercise of discretion, it shows that the start of a trial for jury waiver purposes actually happens a little bit sooner with jury waiver, I'm sorry, with Vordier, because what Rand says is clearly the granting of such a motion then, the motion to waive, after Vordier, such a motion then would have resulted in the waste of the jury's time and state resources expended during jury selection. Accordingly, the trial could not have used this discretion in denying a jury waiver. What state resources were expended during? Where's the case law that says a judge has discretion to deny a jury waiver? Where does it say that? Oh, I think that. If Joyce says a defendant has an absolute right to waive a jury trial, they didn't say up until a certain point in time. Correct. And, you know, Joyce was Joyce. I mean, that's what they said. They came up with this language on the issue of whether the state could force a defendant into a jury trial. And they said, no, if he wants to waive it, he has an absolute right to waive it. I don't see anything anywhere that says, other than Rand, that, oh, it's when jeopardy attaches. I still don't see why you don't have a right to waive a jury trial after the jury's deliberated. And before they reach the verdict. Right. So I think that my reading of Gary v. Joyce is that it was really just an application of the previous case, Spiegel, that says that the decision goes to the defendant. Right. It's an exclusive right of the defendant. Right. But I don't think that that means it's an absolute right that can be exercised at any time in any circumstances. Just think of so many, there are so many other examples of a constitutional right that's exclusive to the defendant. But that doesn't mean that they're able to exercise them in any circumstances whatsoever. A defendant has a right to confront a witness, but not the right to barge a witness. A defendant has a right to be present at a hearing. But if a defendant becomes destructive of the proceedings, the trial court can exercise its discretion in asking the jury of the defendant to move for the remainder of that proceeding. And so the same thing applies, or should apply in the case of exercising a jury waiver. A defendant has a personal exclusive right to decide what type of trial he wants. But once we get to the point where. . . So you're saying that we could ignore Grand and say that the waiver of your right to a jury trial must be exercised the day after the preliminary hearing. I don't think that's. . . I mean, why can't we say that? If the judge is interjecting themselves into when you can exercise the right, why don't we come up with that date? I think that. . . I think this is why Zembos and Rand talk about these factors that a court can look to in exercising its discretion. The waste of the juror's time wouldn't be present if there weren't for. . . And I think that's a good point. It would be an abusive discretion to say that a defendant has to make the decision as to what type of trial. . . We spend all day selecting a jury, take a brief recess so that we can get organized, haven't sworn the jury, and before we come out to swear the jury, the defendant waives his right to a jury. Jeopardy hasn't attached. And you're saying that the judge can say, oh, too late, we spent all day picking a jury. Frankly, I just don't get it. What does the judge care? It's the defendant's right. The judge can sit there and hear the trial quicker in a bench trial than he can going through a jury trial. Absolutely, and frankly, doing research for this case, when I've looked for other examples where the defendant attempts to waive at this point, the judge typically grants it. The question before this court, though, is can the judge have discretion at this point? And Rand and Zembelich at least say the judge has some discretion. I agree, but I just don't get it, frankly. If it's the defendant's right to waive it, he should have the right to waive it. I think maybe another way of addressing this is sort of the policy position that Zembelich talks about, and that's if you have a defendant. So Zembelich is a case where all the evidence had already been heard, and I think you and Justice McBell were both sort of talking about this. Defendant gets all the evidence, comes in, and the defendant hears it and says, you know what, I don't want to have this jury here anymore. I want to have a trial judge hear the case. So fine, they dismiss the jury, they proceed on with the bench trial, and then he says, you know what, I actually want my jury back. So then they've got to go through that process again, perhaps. The same thing could apply in the context of voir dire, where you go through three and a half hours in this case of conducting voir dire, and then, you know, the defendant, as counsel mentions today, has challenges that they can be made, but then you get a panel that's picked, right? And the defendant says, you know what, I don't like that panel. I'm going to exercise 12 correctory challenges right now at once and say I want a bench trial. And then what's going to happen? The jury gets dismissed, they start the bench trial, and the defendant says, you know what, I actually want a jury again. Then you deny it because you waived it. At that point, you waived it. I mean, you don't have to fall over dead and do everything that the defendant wants. Right. But that's a separate issue. The initial waiver should be, in my judgment, should be the defendant's decision. And once made, it's made. Now you're talking about a whole different scenario about, well, I changed my mind. I want to go back to my right to a jury trial. No, you have waived it. And that's when the trial judge has discretion. Yeah, I would agree with that. I love putting you on the spot, Mr. Levitsky. I appreciate that, Your Honor. I do think that you're a good sport. I do think that Rand at least does actually support our position, that when we look at the factors that matter, and at least Rand, through his language about what factors a court can look at, that when it's exercising discretion, as Rand interprets the judge's discretion to be, that those factors go to the factors that are present in voir dire, not in swearing in the jury. That's why he cited thus the start of the trial is context-dependent. And when we're talking about when it becomes untimely to make the jury waiver, we're really talking about the voir dire. If there are no further questions on this issue, I'll just very briefly address that, Your Honor. I think that our brief does cover most of the points I wanted to say. I do think that counsel, when he says that we've conceded that there was, you know, this idea of strict lines being applied in this case, I think that might be a little bit too far. I think what happened in this case is that Judge Sachs may have had the idea that we're looking at a preliminary inquiry where eventually the question is going to become strict, and that's why issues of competence and prejudice might be relevant. But what he ultimately decided was that these issues were properly insufficient, even at the preliminary stage where they went to the matters of trial strategy. And that's what really distinguishes this case from Jackson, where the court actually said I'm applying strict line at the preliminary stage and finding that you haven't established effectiveness. We don't have that here. Another thing is that I think when the defendant talks about this idea that there was really no investigation into the surveillance video, I think that's simply not supported by the record. What we have is we have that letter that was referenced four months or so after the offense, where counsel says I didn't know that there was this pod. I'll subpoena it. We have this colloquy at the preliminary hearing where a defendant talks about how counsel told him that, you know, she wasn't able to get it. But what do we have in addition to just that evidence? We have, well, counsel or an investigator went out and took photographs of these pod cameras, pod towers, and confronted the police officers at trial with them, and then used that to argue to the jury that there was reasonable doubt here. So I don't think we have authority to investigate this issue. I think what we have is counsel who probably just wasn't able to get them because it was four months after the fact and made the best of the situation, which is certainly nothing that could ever support a claim of ineffectiveness. And, again, with respect to the motion to suppress statements, I understand. Counsel was there. No questions were asked. But in light of the entire motion that was, you know, the defendant filed, he also made the claim that he did make a statement. Oh, I'm sorry, that he didn't make a statement at all. And so I don't know how counsel can resolve this if defendant's saying that he did make a statement, but if he did, he didn't receive his Miranda warnings. And so I think what we have here is we have a lengthy colloquy between defendant and the trial court where defendant was able to explain the factual basis for his allegations and the court found that they were not sufficient to walk further proceedings because they generally mixed matters of trial and strategy. Are there any further questions? Questions? Thank you. And for these reasons, I now say in their brief, I ask this Court to affirm defendant's conviction. Thank you. Your Honors, a few brief points on rebuttal. Opposing counsel states that it was not clear whether my client waived his right to a jury. On Volume I.3, he clearly says, I want to waive a jury. Judge Stats understood this was a jury waiver. He said, I'm not giving you a bench at this point. I think that's clear on the record. Also, Your Honors are correct that once you waive a jury, you can only do it once. Our Supreme Court in People v. Catalano clearly says that. After that point, it is with the sole discretion of the trial court whether to allow you to withdraw that jury. So there's no potential for abuse in that context. And to Justice Pierce's concerns, you're correct. You can draw that line because it is an absolute right to the defendant. But this Court has already drawn that line in land, and it is at the point where the jury is sworn. That's the byline rule, and that's the rule that's been working. And as far as the preliminary cranker inquiry, in Jackson there was nothing referenced about Strickland. What the Court said is that the defendant failed to show ineffective assistance, which again are the hallmarks of the Strickland standard. But Strickland was not referenced in that case. And that's, if Your Honors have no further questions, that's it. Any questions? No. This is for both of you. Am I right that actually in this case this defendant has served this full sentence? That is correct. So let's all just acknowledge that that's an unfortunate way to come to this Court, right? That is correct. And we'll work on that in other cases. All right. We'll take this one under advisement, and we will hear from her shortly. As usual, very well done on both sides. Thank you.